UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Balram R. Jerry, | § | CIVIL ACTION NO. 10-1505 |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| Fluor Corporation and Fluor Enterprises, Inc. | § | |
| Defendants | § | A JURY IS DEMANDED |

**Plaintiff's Original Complaint**

It is a very painful matter to be called "Bin Laden" and be subjected to racial slurs on the job. It is even more disturbing when an employer allows those who engaged in this misconduct to achieve their racist goals and get a fine employee dismissed.  That is what happened to Balram R. ("BR") Jerry and it is the reason he brings this lawsuit.

PARTIES

1.      The plaintiff is an individual who resides in Humble, Harris County, Texas.

2.      The defendant, Fluor Corporation, is a Delaware corporation that may be served by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos St., Suite 1050, Austin, Texas 78701.

3.       The defendant, Fluor Enterprises, Inc., is a California corporation that may be served by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos St., Suite 1050, Austin, Texas 78701.

JURISDICTION

4.        This case is brought under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981.  This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5.        Venue is invoked pursuant to 28 U.S.C. § 1391.

STATEMENT OF THE PLAINTIFFS' CASE

6.  B.R. Jerry worked for Fluor for 11 years as an instrumentation and electrical engineer. Because of his technical expertise, Fluor sent him around the globe trouble-shooting on projects. He would still have a job at Fluor today if he were white skinned instead of dark skinned.

7.  If Jerry can be faulted for anything, it is for being so dedicated to his work.  He has a rare type of dedication.  If something needed to get done, he made sure it was done no matter how many hours he had to work to make it happen.  And he was committed to getting the job done right. One example of his dedication is that, in his last position at Fluor, he climbed a 250 foot tower to fix a valve positioner.  The entire instrument group declared it to be unfixable, but Jerry was not satisfied with that attitude.  He wanted the problem fixed – even if he had to personally climb the 250 foot tower.  Certainly, his job description did not require this of an engineer.  But this kind of effort is just part of his make-up.

8.  Jerry's last assignment for Fluor was in Texas City, working on a construction project for BP.  Fluor asked him to work on this project because BP had become quite upset at the shoddy work of one of Fluor's subsidiaries, P2S.  Jerry spent long hours fixing the many errors that had been made before his involvement. But, instead of welcoming his expertise, the all-white construction team treated him with great disrespect.

9.   Because of Jerry's Indian descent and dark coloration, the construction crew assumed he was an Islamic Arab.  They targeted him with numerous racial slurs and even called him "Bin Laden."  As one employee put it, "There was constant racist name calling of BR from the construction side throughout the project which I could not understand because we were all trying to get the project completed.  They were calling him Bin Laden because of what they perceived of his ethnic background."   As another worker put it, "Many of the ragtag crew on the BP Texas City Project, assumed that because of his darker skin, facial features and hair coloring, that Balram was of Arabic or Islamic background.  Because of this he was subject to numerous counts of ethnic slurs and racial comments."

10.   Because of their biases, the construction workers resented taking orders from Jerry and resented his ability to fix the errors they could not fix.  Things got even worse when one of the office employees revealed his salary to these men.  They were so angry that one of them, Joe Yost, called in a complaint about Jerry to the ethics hotline.

11.   When Jerry learned of this complaint, he explained to his manager, Ken Valentine, that the complaint was not made in good faith and that Yost and his cohorts had made numerous racial slurs about him. He recommended that Valentine talk with BP personnel and other Fluor employees about what was really going on.  Sadly, that did not happen. Purchasing Manager Jim Gray even sent an email to Valentine explaining the situation but never received a response.

12.   Instead, Fluor accepted the race-based attacks hook, line and sinker.  Since then, Fluor has offered various excuses for the inexcusable bias.  For one, Fluor claimed that Jerry committed misconduct by working too many hours.  Fluor also attacked him for seeking reimbursement for a cell phone, despite the fact that he needed it to do his job on this

3

construction project and despite the year-long history of reimbursing him for this.  Fluor also

faulted him for taking a company truck home, which he did at BP's request after he had checked

on and picked up instruments after hours, on his own time, and far from the site.  And Fluor

raised the red herring of a supposed conflict of interest because his wife is a Fluor approved

vendor.

13.  The BP consultant with whom Jerry worked had a much different view of the

termination: "BR Jerry was terminated today. It is my opinion that this is a stab in the back for a

guy that has consistently done a good job."  A Fluor co-worker agreed, calling it "disgusting that

a person of Mr. Jerry's compassion, and love for people, and the highest level of technical

leadership skills and knowledge be the victim of such efforts."

14.  Each of the excuses offered by Fluor is false.  In fact, to accuse someone of working

too hard is surely a sign that something inappropriate is afoot.  This was a $300 million dollar

project for Fluor and the defendants should praise, rather than criticize, Jerry for his diligence

and dedication.  It was Jerry's hard work that benefitted Fluor over and over again on projects.  It

is true that Jerry's wife owns a company that provided supplies to Fluor, but she is a registered

vendor and Jerry disclosed their relationship under the company's conflict of interest policy.  But

he did not rely solely on this written notification, he also provided this information directly to the

purchasing manager for the Texas City project, Jim Gray, and the project manager, Danny King.

Jerry also told them he could not be involved with recommending purchasing because of his

wife's ownership interest.  He only validated the technical correctness of requisitions.  But Fluor

turned a blind eye to information that was right in front of its face.  If Fluor had talked to Gray,

for example, it would have learned that Jerry was a "dedicated Fluor teammate committed in helping our Client get the job done."

15.    Rather than punishing the racist behavior that Jerry had suffered and which it had been informed about, Fluor simply punished the victim further by dismissing him.  But, even this process was flawed, as it failed to provide him with the required COBRA notice that would have allowed him to continue his health insurance.  Further, when Jerry challenged his termination, Fluor took matters one step further and, as he learned, actively engaged in efforts to blackball him from receiving other jobs.

16.    In this case, both Fluor Corporation and Fluor Enterprises, Inc. are sued.  The two corporations are closely affiliated and have a parent-subsidiary relationship.  He received pay from both defendants.  Fluor Corporation also made decisions about his employment including reviewing and increasing his salary.  Fluor Enterprises, Inc. issued Jerry's W-2's.

## Race and National Origin Discrimination

17.    The defendants' conduct violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment on the basis of race and national origin.  It also violates 42 U.S.C. § 1981, which also prohibits such discrimination in employment.

18.    The plaintiff timely filed a charge of discrimination to challenge the discrimination he suffered.  He has received a right to sue letter on this charge and timely files this lawsuit to vindicate his rights.

## Retaliation

19.     The defendants have also engaged in retaliation against Jerry by actively trying to keep him from getting other employment.  This was done in retaliation for him challenging his termination.

## Damages

20.     The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries he suffered at the hands of the defendant, including, but not limited to, mental anguish.

21.     Further, because Fluor's actions were of the sort that render the imposition of exemplary damages appropriate, the plaintiff is entitled to an award of these damages.

## RELIEF REQUESTED

The plaintiff asks this court to enter a judgment:

1.  Declaring that the acts and practices described of in this Complaint are in violation of Title VII and 42 U.S.C. § 1981;

2.  Enjoining and permanently restraining these violations of Title VII and 42 U.S.C. § 1981;

3.  Directing the defendants to pay plaintiff actual and compensatory damages that he suffered, past and future;

4.  Directing the defendants to pay plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;

5.  Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

6.  Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7.  Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8.  Awarding plaintiff such other relief, legal or equitable, as may be warranted.


Respectfully submitted,


s/ Katherine L. Butler *
Federal I.D. No. 4734
State Bar No. 03526300
Paul R. Harris
Federal I.D. No. 897365
State Bar No. 24059905
1007 Heights Boulevard
Houston, Texas  77008
(713) 526-5677
Fax (713) 526-5691

**\*Attorney in charge for Plaintiff**